**AFFIRMED and Opinion Filed November 30, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-00579-CR
_____

### EX PARTE UKACHUKWU WISDOM AMANZE

**On Appeal from the County Criminal Court No. 11**
**Dallas County, Texas**
**Trial Court Cause No. MC16A1895**

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Myers

Ukachukwu Wisdom Amanze[1] appeals the trial court's order denying his post-judgment application for writ of habeas corpus. In three issues, appellant asserts the trial court erred in denying relief upon his application because the record does not support the trial court's findings and he received ineffective assistance of counsel. We affirm the trial court's order.

### BACKGROUND

Appellant is a Nigerian citizen who has been living in the United States as a legal permanent resident since 2007. In 2012, he was charged with four misdemeanor offenses: assault involving family violence, unlawful restraint, interference with an emergency telephone call, and violation of a protective order. Two other assault charges were dropped. All of the

_____

[1] In portions of the record, appellant is named as Wisdom Ukachukwu Amanze. During the hearing on his writ application, appellant testified his name was Ukachukwu Wisdom Amanze.

charges stemmed from appellant's dating relationship with the complainant, N.G.

On trial counsel's advice, appellant accepted a plea bargain agreement in which he pleaded guilty in front of a Dallas County magistrate judge to all four charges in exchange for twenty-four months of deferred adjudication. Because appellant's offenses are considered crimes involving moral turpitude and subject him to mandatory removal from the United States, federal immigration authorities detained appellant. The federal immigration court has ordered appellant be removed from the United States.

To challenge his removal, appellant filed an application for writ of habeas corpus alleging his guilty pleas were involuntary because trial counsel rendered ineffective assistance in advising him about the deportation consequences of his pleas. The trial court conducted a hearing on the application. Both appellant and trial counsel testified.

Appellant testified he met trial counsel only once before entering his plea—for five-to-ten minutes in the holding cell on the date of the plea hearing. According to appellant, trial counsel did not inform him of trial counsel's name, refused to help him bond out of jail, did not inform him of the charges other than that they were four misdemeanors, and advised him that if he completed the twenty-four months of probation, the charges would be off of his record. Appellant testified he did not read any of the plea documents nor were any of them explained to him. Appellant alleged trial counsel slid the signature page of the plea papers under the glass in front of him and told him to sign it. Appellant testified trial counsel never asked him about the facts of his case and ignored his information that he had evidence in his cell phone that would prove the complainant's cuts and bruises were caused by poison ivy rather than family violence. Appellant denied that trial counsel ever inquired about where he was from or about his immigration status. Appellant testified that neither trial counsel nor any of the magistrates he appeared in front of advised him that he would be deported if he accepted the plea bargain

agreement for deferred adjudication. When asked if he would have entered a guilty plea had trial counsel properly advised him that he would be deported, appellant replied, "I would not have pled guilty at all, because I told him that day, I want to fight, and I know it never happened."

On cross-examination, appellant admitted he never brought up his immigration status with trial counsel. Appellant also admitted that the magistrate judges' arraignment sheets prepared in connection with his appearances before the magistrate judges have boxes checked attesting that appellant stated to the magistrate judges that he was a citizen of the United States.[2] Appellant explained that only one magistrate questioned him about his citizenship, and that magistrate asked him whether he was a United States citizen or whether he was "illegal." Appellant testified that he told the magistrate that he was a resident. On appeal, appellant contends the forms were "prepopulated" and that once the erroneous statement about appellant's citizenship status was entered in the system, the same information was added to each additional form.

Trial counsel, an assistant public defender, testified that he could not remember handling appellant's case four years earlier, but he could testify about the public defender's "practices and procedures for handling cases like his." Trial counsel testified that when he first meets with a client, he tells the client his name and uses standardized forms to interview the clients. Among the questions he asks is an inquiry about where the client was born. If trial counsel did not

---

[2] Appellant testified about two of the arraignment sheets. The trial court allowed the State to use the arraignment sheets for cross-examination because they were submitted to the trial court as exhibits to a motion appellant had filed. Appellant's reply brief identifies this motion as a motion for judgment nunc pro tunc that was abandoned in favor of appellant's habeas application. Neither arraignment sheet was admitted as an exhibit during the habeas hearing, and neither appears in the habeas record. Appellant's brief, however, concedes that there are three such arraignment sheets signed by magistrate judges indicating appellant had stated to them that he was a citizen of the United States. Appellant has attached four arraignment sheets to his brief as exhibits. Exhibits attached to appellate briefs do not constitute evidence on appeal. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *Harris v. State*, 453 S.W.2d 838, 839 (Tex. Crim. App. 1970).

recognize the place of birth as being in the United States, he would follow up with a question about whether the client is a citizen of another country. Even if trial counsel recognizes the place of birth as being within the United States, he would still ask the client if the client is a citizen of the United States. For clients who state they are not citizens of the United States, trial counsel explained the advising process:

> we do take them through an explanation of how in a—in a case—in a particular case their plea might affect their ability to either remain in the country, be granted citizenship at a later date or perhaps even make them subject to deportation. We do that every time we—we plead a client—or—we meet a client, excuse me.

Trial counsel testified he never assumes anything about a client's citizenship status. Trial counsel makes the citizenship inquiries so that he can determine whether to make "further immigration inquiries." Trial counsel testified the public defender makes such inquiries "so that we can advise the client on whether or not there might be any—any collateral consequences to the choices that they make and how they—how they dispose of their case."

Trial counsel testified that after getting basic biographical information, he would ask for the client's "side of the story" and inform them of the charges against them. Trial counsel would then go over the range of punishment and discuss what options the client might have for resolving the case. Trial counsel testified the public defender's office "follow[s] that particular procedure for every client we see."

Trial counsel testified that if a client decides to accept a plea bargain, the public defender takes them step-by-step through the trial court's admonishments and the plea document including getting their signature on three places in the document where they must agree to waive their right to a trial and an appeal, to agree to waive ten days to prepare and accept the public defender as their attorney, and finally at the bottom of the plea agreement, to apply for probation. Trial counsel denied ever having just handed a client documents and telling them to sign the document

–4–

without explaining what the client was signing. Trial counsel testified he physically circles the waiver of a right to a trial while he is explaining the plea document to a client.

Trial counsel then testified as follows about the immigration admonishment:

[The State]: So it is your testimony here today that you have properly advised your clients in the manner that you described in those—in the processes you just explained?

[Counsel]: Yes, it is.

[The State]: And you make sure that if you have knowledge that there is an immigration issue that they are properly informed—

[Counsel]: Yes. And—

[The State]: —on—on those issues?

[Counsel]: —as a matter of fact, our practice at the time was if a client insisted or chose to enter a plea and that plea might have adverse consequences to them, based on their disclosure to us that they were not a citizen of the U.S., we asked them to sign or initial the section of the admonition that says that—that says that they—they understand that this plea could have adverse consequences in terms of deportation, exclusion or denial of citizenship.

So, in this particular case it's my—it's my assertion and belief that [appellant] did not tell us that or we would have followed that procedure that our—that our leadership has—has imposed on us.

Trial counsel testified that trial court judges generally ask defendants whether the defendant is a citizen and if the defendant indicates he or she is not a citizen, the judge usually follows up with the admonition about how the plea could affect their immigration status. Trial counsel affirmed that he followed the public defender's office protocol "to the T" for every client he represented. He also indicated that he believed there may be additional documentation in his file for the case which would be in storage.

Trial counsel admitted that he could not recite every crime that would trigger mandatory deportation but he believed generally that it was crimes of moral turpitude and drug cases. He

–5–

explained, "I can't give you chapter and verse every one off the top of my head, which is why we go through a process of inquiring before we ask a client to plead so that we can make sure that we know how—how a particular case will affect them." When asked what he would do if a client told him the client was not a citizen and he was "unaware of the implications of what's a mandatory deportable offense," he related he would:

> advise them to—to seek counsel from an experienced immigration attorney and I will offer to reset the case and pass it for a number of days or weeks in order to allow them to—to—reach out to an immigration attorney and sometimes if they don't know any, I'm—I'm willing to supply them with a list of names that they can pick from.

Trial counsel testified that the public defender's office has immigration attorneys on staff for indigent clients.

After hearing argument from counsel, the trial court took a short recess to "look into some things. . . ." When the trial court returned it stated as follows:

> Okay. And I was gonna reset this so that the Public Defender's Office could actually get the file, and then something hit me while I was in my chambers that kind of sums it all up for me. But I wanna go over a couple of things first.

> One, I don't quite find you credible, Mr. Amanze, because I have three documents that your Defense attorney— or prior Defense attorney filed with three of my colleagues, Mr. —Magistrate Autry, Magistrate Carlton and Magistrate Wolff, and it's hard for me to believe that out of all three of them they all got it wrong. Actually, I don't believe that.

> I believe that you weren't being honest when they asked you that question, for whatever reason. And I'm—I'm more apt to believe that you weren't being honest because of the level of intelligence you have. And you know the—you know the consequences of just being involved in the law and violating the law, that there was—that wasn't a good thing. And coming to this country and getting the education you have gotten, I have a hard time believing that you just took papers shoved at you.

> First of all, I don't believe papers were shoved at you, especially after the Padilla case. Second of all, I have a hard time believing a man of your intelligence who wants to get out on bond, who didn't believe that he committed these offenses, just bowed down and just signed where he was told to sign. I don't find you credible. I don't believe that the Defense has met its burden.

–6–

But furthermore, I know that the practices that [trial counsel] testified to were followed because exactly what he said about circling certain areas, the right to a jury trial, waiving the right to appeal, on every single document, that was done. So there was a conversation that I'm certain of, based on your own exhibits that were filed. And that didn't hit me until I walked off the—the bench.

But I'm going to deny—based on your own evidence, I find it that you were well advised about your immigration rights, if you told the truth to [trial counsel], if you did not do what you did to the three magistrates and be dishonest. But that you are well aware of your immigration—adverse immigration consequences and I'm denying your Writ for Habeas Corpus.

In its written order, the trial court denied appellant's writ application and made only one finding: "The defendant, fully aware of the immigration consequences of his plea, waived his Constitutional rights and entered into said plea agreement knowingly and voluntarily."

## APPLICABLE LAW

An applicant for post-conviction habeas corpus relief bears the burden of proving his or her claim by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). When the underlying conviction results in community supervision, an ensuing post-conviction writ must be brought pursuant to article 11.072 of the code of criminal procedure, and the trial judge is the sole finder of fact. *Id*. at 42. In reviewing the trial court's order denying habeas corpus relief on an article 11.072 writ, the trial court is the sole finder of fact, and "we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor." *Id*. We will uphold the trial court's ruling absent an abuse of discretion. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We defer to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and

demeanor.  *See id.*  If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo.  *See id.*

To obtain habeas corpus relief on the ground of ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different.  *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1482 (2010); *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  In the context of a complaint about counsel's plea advice, appellant must show (1) counsel's plea advice did not fall within the wide range of competence demanded of attorneys in criminal cases and (2) there is a reasonable probability that, but for counsel's deficient performance, appellant would have insisted on going to trial rather than accepting the offer and pleading guilty.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

To satisfy his burden under the first prong of the test, appellant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689.  Appellant bears the burden of proving counsel was ineffective by a preponderance of the evidence.  See *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Our review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight.  *Id*.  Under the second prong of the test, a reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812.

Inaccurate advice regarding a non-citizen client's potential deportation may constitute ineffective assistance.  *See Padilla*, 130 S.Ct. at 1482.  When the consequences are "not succinct and straightforward," counsel's duty is to advise the defendant of the possibility that the plea may carry a risk of adverse immigration consequences.  *Id*. at 1483; *Torres*, 483 S.W.3d at 44.

When, however, federal immigration law clearly specifies that the defendant will be deported, counsel must affirmatively and correctly advise the defendant about immigration consequences of the plea. *See Padilla*, 130 S.Ct. at 1483; *Torres*, 483 S.W.3d at 44.

Under federal immigration law, deferred adjudication is considered to be a conviction if the defendant entered a guilty or no-contest plea and punishment was assessed. *See* 8 U.S.C.A. § 1101(a)(48)(A) (2005); *Moosa v. INS*, 171 F.3d 994, 1005–06 (5th Cir. 1999) (assessment of deferred adjudication in Texas constitutes conviction for immigration purposes). Among other provisions immaterial to this case, federal immigration law provides an alien is automatically deportable if convicted within five years of admission to the United States of "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed . . . ." *See* U.S.C.A. § 1227(a)(2)(A)(i) (West 2005). Additionally, one may be deported for committing two offenses involving moral turpitude at any time after admission to the United States. *See id*. at § 1227(a)(2)(A)(ii). The Immigration and Nationality Act does not identify particular offenses as crimes involving moral turpitude, but rather leaves the designation of particular offenses to the Bureau of Immigration Appeals and the federal courts. *Fuentes-Cruz v. Gonzales*, 489 F.3d 724, 726 (5th Cir. 2007).

## ANALYSIS

### *Findings*

In his first issue, appellant contends the record does not support the trial court's findings that he was fully aware of the immigration consequences of his plea, that he waived his constitutional rights, and that he entered into the plea agreement knowingly and voluntarily. Appellant seizes upon the trial court's comment at the end of the habeas hearing that she did not find appellant credible because she thought he was too intelligent to have entered into the plea

arrangement he described, and he also complains the trial court erred in considering the arraignment sheet records in her chambers that the State failed to admit into evidence.

We view the assessment of appellant's intelligence as inherently part of the trial court's overall weighing of credibility and demeanor. *See Ex parte Torres*, 483 S.W.3d at 42. In reviewing an article 11.072 writ application, we are required to give extraordinary deference to the trial court's findings based on credibility and demeanor. *See id.* We will not second-guess the trial court's assessment of appellant's intelligence nor her view of how appellant's intellect undermined his credibility.

Appellant cites no authority for the proposition that the trial court could not review the arraignment sheets appellant himself had sponsored as exhibits to an earlier motion. Appellant attaches copies of the sheets to his brief and appears to concede that the exhibits are genuine. Without citation to authority, we view this argument as inadequately briefed and decline to reverse the trial court's decision on this ground. *See Lagrone v. State*, 942 S.W.2d 602, 614 (Tex. Crim. App. 1997).

*Ineffective Assistance of Counsel*

In his second issue, appellant contends he has shown that trial counsel's performance fell below the standard of conduct required by the first prong of the *Strickland* standard. In his third issue, appellant contends he was prejudiced by trial counsel's deficient performance and thus meets the second prong of the *Strickland* standard. Because we conclude appellant cannot meet the first prong of the *Strickland* standard and the trial court made no express findings on the second prong, we will address only appellant's second issue. *See Mata v. State*, 226 S.W.3d 425, 433 (Tex. Crim. App. 2007) (appellate court need not address second prong of *Strickland* standard when first prong has clearly not been met).

At this point, four years after the advice was rendered, counsel has no independent

–10–

recollection of what transpired. Appellant contends that his firsthand account of events should be viewed as more credible than the secondhand rendition of policies and procedures that trial counsel relayed. Appellant criticizes the trial court's finding against him on credibility issues, deriding the trial court's analysis as a snap judgment that was "instantaneous and not given a lot of thought."

Relying upon appellant's version of his representation by trial counsel, appellant contends trial counsel failed to fulfill his duties to: (1) independently determine appellant's immigration status, verify his citizenship, and warn him of the deportation consequences of his plea; and (2) investigate the facts and records and inform appellant about prior dismissed assault charges.

*Citizenship Inquiries and Deportation Advice*

The State concedes that appellant faced mandatory deportation for his offenses. In ordering appellant's deportation, the immigration court concluded appellant had committed an offense involving moral turpitude within five years of his admission to the United States and also found that he had committed two offenses involving moral turpitude after his admission to the United States. *See* U.S.C.A. § 1227(a)(2)(A)(i), (ii); *see also* U.S.C.A. § 1227(a)(2)(E) (providing for deportation of aliens who commit crimes involving domestic violence and violation of protective orders); *Sharpe v. Riley*, 271 F.Supp.2d 631, 635–36 (E.D. Pa. 2003) (unlawful restraint is crime involving moral turpitude necessitating removal); Ex *parte Obi*, 446 S.W.3d 590, 600 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (op. on reh'g) (citing *Enyong v. State*, 369 S.W.3d 593, 600–02 (Tex. App.—Houston [1st Dist.] 2012), *vacated on other grounds*, *Ex parte Enyong*, 397 S.W.3d 208 (Tex. Crim. App. 2013) (misdemeanor assault of a family member is crime triggering mandatory removal of legal permanent resident placed on deferred adjudication in Texas). Thus, to render effective assistance, trial counsel was required

to inform appellant that he faced mandatory deportation if he accepted the plea bargain. *See Padilla*, 130 S.Ct. at 1483; *Torres*, 483 S.W.3d at 44.

Appellant contends the record is silent except for his own account of receiving no immigration advice whatsoever. A truly silent record would support an inference that appellant was not informed of the immigration consequences of his plea. *See Hwang v. State*, 130 S.W.3d 496, 500 (Tex. App.—Dallas 2004, pet. ref'd).

Contrary to appellant's suggestion, the record in this case is not silent. The record contains trial counsel's account of how he interviews and advises a client before entry of a plea. In finding that appellant entered his plea with a full understanding of the immigration consequences of his plea, the trial court necessarily made an implied finding that trial counsel's account was credible while appellant's testimony was not credible. This implied finding mirrors the trial court's oral pronouncement on the record that appellant's account was not credible. We are required to defer to the trial court's implied factual findings that are supported by the record. *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006).

The record shows that trial counsel always asks the client questions about his background including where the client was born and whether the client is a citizen of the United States. If he does not recognize that the place of birth is in the United States, he asks whether the client is a citizen of another country. Trial counsel assured the trial court that he never assumes anything about the client's citizenship. Trial counsel testified he asks each client about their background and their side of the story in evaluating the client's options.

Appellant suggests that the absence of a "Defendant's Personal Data Sheet" that he alleges should be attached to the plea papers indicates that trial counsel was not concerned about appellant's background at the time of the plea. There is no mention of a missing data sheet in the record on appeal. Trial counsel raises this issue for the first time on appeal and has attached a

–12–

copy of the alleged data sheet as an appendix to his brief. Assertions in a brief unsupported by evidence in the record will not be accepted as fact. *Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996). We are bound by the record before the trial court at the time of the habeas hearing. *See Whitehead*, 130 S.W.3d at 872. Furthermore, exhibits attached to a party's brief are not part of the record on appeal. *See Harris*, 453 S.W.2d at 839.

Appellant also points out that the deportation admonishments on the plea agreements are not signed or initialed as trial counsel testified was his standard practice in advising a client who might face adverse immigration consequences. Appellant concedes that the magistrates' arraignment sheets reflect checked boxes indicating appellant told the magistrates that he was a citizen of the United States. But appellant contends that even if appellant had told trial counsel that he was a citizen of the United States as trial counsel speculated during his testimony, trial counsel had a duty to independently determine and verify appellant's citizenship. Appellant contends it was not sufficient for trial counsel to rely upon the arraignment sheets. Appellant points to what he views are clues in the record that appellant was not a citizen of the United States: appellant's name, foreign accent, the fact that he had no family in the area, affidavits of probable cause identifying him as a Nigerian male, and the affidavit of N.G. submitted to obtain a protective order in which N.G. alleged appellant threatened to beat her into a coma and return to Nigeria if he ever caught her cheating on him.

Assuming arguendo that appellant deceived trial counsel about his citizenship status and thus received no advice about deportation, appellant cites no Texas or federal case authority imposing a broad affirmative duty on counsel to uncover a client's deception and determine definitively the client's immigration status, and we will not impose one today. The case authorities appellant does cite are factually distinguishable from the current case.

Appellant first cites to a case from Massachusetts in which defense counsel testified he

did not inquire about a client's immigration status and, unless there was a "red flag" or the client brought an immigration issue to his attention, he merely gave the client a standard warning that his plea might have immigration consequences. *See Com. v. Lavrinenko*, 38 N.E.3d 278, 284–85 (Mass. 2015). *Lavrinenko* held that counsel must "make a reasonable inquiry of his or her client regarding the client's history, including whether he or she is a citizen of the United States." *See id.* at 288. The Massachusetts court faulted counsel because "it was not his usual practice to ask clients facing criminal charges whether they were noncitizens. . . ." *See id.* at 290. In contrast, appellant's trial counsel testified he always asks where a client was born, whether the client is a citizen, and then follows up with immigration advice when needed.

Appellant also cites two Texas authorities as being similar to the present case. *See State v. Flores*, No. 09-14-00034-CR, 2014 WL 3387623 (Tex. App.—Beaumont July 9, 2014, no pet.) (Mem. Op.) (not designated for pub.); *Fakeye v. State*, 192 S.W.3d 112 (Tex. App.—Fort Worth 2006), *aff'd*, 227 S.W.3d 714 (Tex. Crim. App. 2007). In *Flores*, the appellate court upheld the trial court's finding of ineffective assistance of counsel where the record reflected that a legal permanent resident who did not speak English entered a guilty plea without receiving any deportation advice. *See Flores*, 2014 WL 3387623, at *6. The defendant had signed the plea papers and, during her plea hearing, she had twice communicated to the trial court that she was a citizen of the United States. *Id.* at *4. During the habeas proceeding, trial counsel testified the defendant had told him she was a citizen and he took the defendant's word for it that she knew whether she was a citizen and he did no further investigation. *Id.* Trial counsel did not speak Spanish and he had communicated with the defendant through her bilingual daughter. *See id.* The daughter testified that she could not "really make a full-blown conversation" in Spanish. *Id.* at *5. The defendant testified that she did not understand the difference between being a citizen and being a legal permanent resident, her daughter had not translated the plea papers to her, and

counsel had not discussed her immigration status. *Id.* In contrast to *Flores*, appellant speaks fluent English, and our record shows trial counsel did more than merely ask appellant whether he was a United States citizen. By asking appellant where he was born, appellant's trial counsel conducted enough of an investigation to distinguish this case from the situation in *Flores*.

In *Fakeye*, the defendant's conviction was reversed because the record was totally silent regarding any deportation admonishments, the record suggested he was totally unaware of the deportation consequences of his plea, and the record contained some evidence that the defendant was not a United States citizen. *See Fakeye*, 192 S.W.3d at 114. In contrast, appellant received a written deportation admonishment and trial counsel testified he would have made inquiries about appellant's background and citizenship and followed that up with advice about deportation. We conclude that *Fakeye* is distinguishable on its facts.

Finally, appellant cites to this Court's opinion in *Melton v. State* in which the Court concluded the defendant had received ineffective assistance of counsel where the defendant, who suffered alcohol blackouts and had no recollection of committing the charged robbery, changed his plea from not guilty to guilty after trial counsel, without investigating to confirm the information, misinformed the defendant he had been captured on videotape committing the robbery. *See Melton v. State*, 987 S.W.2d 72, 74–77 & n.1 (Tex. App.—Dallas 1998, no pet.). We agree with appellant that trial counsel must have a firm command of the facts to give proper advice. *See id.* at 77. However, in *Melton*, there was persuasive evidence showing counsel had not conducted an investigation and had misinformed the defendant. There is no credible evidence of such neglect of duty or conveyance of misinformation in the present case.

To provide effective assistance of counsel, an attorney whose client faces mandatory deportation must deliver to the client a succinct warning that a guilty plea will result in the client's deportation. It is not sufficient for trial counsel to merely go over the trial court's written

–15–

admonishment stating that appellant might be deported if he entered a guilty plea nor would it be sufficient for trial counsel to merely advise appellant to seek out immigration counsel to provide further advice. *See Torres*, 483 S.W.3d at 40, 45–46. We are cognizant that trial counsel testified he would have gone over the trial court's deportation admonishment with appellant that states appellant "may" be deported and he would have advised appellant to seek immigration counsel. We are also cognizant, however, that while trial counsel could not remember the exact advice he gave to appellant, he testified he would have questioned appellant about his citizenship, and he affirmed he would "make sure" that a defendant he knew had an "immigration issue" was "properly informed." Although trial counsel admitted he did not know all of the offenses that would result in mandatory deportation, he did know that crimes involving moral turpitude would result in mandatory deportation and testified "I can't give you chapter and verse every one off the top of my head, which is why we go through a process of inquiring before we ask a client to plead so that we can make sure that we know how a particular case will affect them."

The trial court found appellant was "fully aware of the immigration consequences of his plea. . . ." We conclude one could infer from trial counsel's testimony that trial counsel would have advised appellant that he would be deported if he entered his guilty plea. Because the record and reasonable inferences from it support the trial court's finding that appellant understood he would be deported, we will defer to the trial court's finding. *See Torres*, 483 S.W.3d at 42.

### *Investigation*

Next, we turn to appellant's assertion that trial counsel failed to investigate the facts and records and failed to inform him about the two dismissed assault charges. Appellant's allegation that trial counsel performed an inadequate investigation of the facts and records is supported only

by his own testimony which the trial court concluded was not credible. Trial counsel was not probed with any questions about what paperwork he reviewed or what he knew or relayed to appellant, if anything, about the two dismissed assault charges. On the record presented, we cannot conclude trial counsel's investigation did not meet professional standards. *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (court may not assume on record that is silent about depth of counsel's investigation that counsel made no investigation).

*Conclusion*

Appellant bears the burden of proving his claims of ineffective assistance by a preponderance of the evidence. *See Torres*, 483 S.W.3d at 43. We conclude appellant has failed to show that trial counsel's investigation and deportation advice in connection with his plea fell below an objective level of reasonableness. *See Strickland*, 466 U.S. at 687; *Torres*, 483 S.W.3d at 43. We overrule appellant's second issue. Having concluded that appellant cannot meet the first prong of *Strickland*, we conclude he has not shown he received ineffective assistance of counsel or that the trial court abused its discretion in denying his writ application. *See Strickland*, 466 U.S. at 687; *Torres*, 483 S.W.3d at 43; *Mata*, 226 S.W.3d at 433.

We affirm the trial court's order denying relief on appellant's application for writ of habeas corpus.

/Lana Myers/
LANA MYERS
Do Not Publish                                    JUSTICE
TEX. R. APP. P. 47
160579F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE UKACHUKWU WISDOM
AMANZE

No. 05-16-00579-CR

On Appeal from the County Criminal Court
No. 11, Dallas County, Texas
Trial Court Cause No. MC16A1895.
Opinion delivered by Justice Myers. Justices
Stoddart and Whitehill participating.

Based on the Court's opinion of this date, the trial court's order denying relief on appellant's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 30th day of November, 2016.